IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JUDY A. MUSGROVE, INDIVIDUALLY AND AS BENEFICIARY OF THE MAINSTART TRUST, CUST. FBO JUDY A. MUSGROVE IRA, ET AL, | § § § § | ADV. PROC. NO. 25-05047-CAG |
| Plaintiffs, | § § | |
| V. | § § § | REMOVED FROM THE DISTRICT COURT FOR BEXAR COUNTY CAUSE NO. 2023-CI-22575 |
| BROOKLYN CHANDLER WILLY, ET AL, | § § | |
| Defendants. | § § | |
| JOHN PATRICK LOWE, IN HIS CAPACITY AS COURT APPOINTED RECEIVER, | § § § § | |
| Plaintiff, | § § | |
| V. | § § § | |
| COLLINS ASSET GROUP, LLC, ET AL, | § § | |
| Defendants. | § § | |

**DEFENDANT WALTER COLLINS' LIMITED OBJECTION AND OPPOSITION
TO PLAINTIFFS' MOTIONS TO REMAND [ECF NOS. 13 & 15]**

Defendant Walter Collins submits this limited objection and opposition to Plaintiffs' Motions to Remand [ECF Nos. 13 and 15]. As Mr. Collins understands the Motions, Plaintiffs ask this Court to remand their claims against all defendants other than the Debtor, Collins Asset Group, LLC.[1] This would mean remanding to state court all claims for fraudulent transfers

---

[1] The two pending motions for remand appear to conflict as to the scope of relief. The Musgrove Plaintiffs seek remand of all claims against all defendants, effectively severing the Debtor from the dispute. *See* Musgrove Plaintiffs' Motion to Remand [ECF No. 13] at Fn. 3, and ¶¶ 32, 40. In contrast, the Receiver does not seek remand of his claims against the Debtor or the fraudulent transfer claims against the Oliphant Parties for allegedly receiving fraudulent

allegedly made by the Debtor to various defendants, including Mr. Collins, and all claims asserted against Mr. Collins based on his role as the former owner and CEO of the Debtor.

While Mr. Collins takes no position as to whether claims asserted against certain non-debtor defendants should be remanded to state court (particularly those claims that concern the relationship between the Ferrum Defendants and their individual investors), all claims asserted against Mr. Collins should be litigated in the same forum as the claims asserted against the Debtor. Therefore, Mr. Collins opposes the relief requested in the Motions to the extent Plaintiffs seek to sever the Debtor from this litigation while remanding the claims against him, and would respectfully show as follows:

## ARGUMENT

**A. The claims asserted against Mr. Collins are intertwined with the claims asserted against the Debtor.**

1. Mr. Collins is the retired founder and former CEO of Collins Asset Group, LLC (the "Debtor"). He retired in 2021 and his interest in the Debtor was bought out at that time through a corporate reorganization involving the Oliphant Defendants.[2] Plaintiffs in the Musgrove Action accuse Mr. Collins of using the Debtor's business to facilitate and support the Ferrum Defendants' alleged "Ponzi" scheme, and of receiving purported fraudulent transfers from the Debtor at a time when the Debtor was allegedly insolvent.[3]

---

transfers from the Debtor, apparently acknowledging that such claims belong to the estate. *See* Receiver's Motion to Remand [ECF No. 15] at ¶¶ 6, 17. Note that Mr. Collins is not a Defendant in the Receiver's action.

[2] *See* Exhibit 2, Excerpt of Deposition of Walt Collins at 170:6-173:3.

[3] *See generally* Musgrove Motion to Remand at ¶ 3-4. As noted, Mr. Collins is not named as a defendant in the Receiver's action. *See* Receiver's First Amended Petition [ECF 1-2] at ¶ 2.

2

2. All claims asserted against Mr. Collins are asserted jointly against the Debtor—there are no claims asserted against Mr. Collins that are not also asserted against the Debtor.[4] All claims asserted against Mr. Collins are based on his role with the Debtor's business between 2017 and 2021, his alleged receipt of funds from the Debtor in 2021, and the Debtor's lending agreements with the Ferrum Defendants.[5] Ultimately, Plaintiffs seek to invalidate transfers they claim were made by the Debtor to Mr. Collins, which, if successful, would theoretically require Mr. Collins to return the proceeds of such transfers to the estate, not to Plaintiffs.[6] Mr. Collins also has contribution and indemnity claims against the Debtor in connection with the claims asserted against him.

3. In the Motions, Plaintiffs attempt to separate some of their allegations and claims involving the Debtor from the allegations and claims against the Ferrum Defendants (and the individual broker/dealers who allegedly perpetrated the fraudulent investment scheme in direct privity with the individual Plaintiffs).[7] However, in their state court petition, Plaintiffs place the Debtor, together with Mr. Collins, at the center of their claims:

- "All of the Defendants in this case conspired to form and operate an investment scheme to defraud Plaintiffs by promoting guaranteed profits on investor funds on radio, television, and in person. All of the Defendants were either issuers, investment advisors, investment advisor representatives, dealers, brokers, agents or control persons as defined by the Texas Securities Act."[8]

- "Upon information and belief, CAG transferred the cash assets it received from Ferrum Capital to its affiliates and owners, Hollins Holdings, Oliphant USA, AIM,

---

[4] *See* Chart of Claims, Musgrove Plaintiffs' Motion to Remand [ECF No. 13] at ¶ 17.

[5] *See, e.g., id. See also, e.g.,* Musgrove Second Amended Petition [ECF 1-6] at ¶¶ 18, 161, 201-202, 215-223, 248-250, 262, 288.

[6] Mr. Collins disputes these claims and denies that he received any fraudulent transfers.

[7] *Compare, e.g.,* Musgrove Plaintiffs' Motion to Remand [ECF No. 13] at ¶¶ 3-5 and Musgrove Second Amended Petition at ¶¶ 116-117. *See also, e.g.,* Musgrove Plaintiffs' Motion to Remand [ECF No. 13] at ¶¶ 30-31.

[8] Musgrove Plaintiffs' Second Amended Petition [ECF No. 1-6] at ¶ 16.

- and Walt. The last financial statement provided by CAG reflects a receivable on its balance sheet of 53,449.29 owing by a related party—which by definition must be one of the other Oliphant Entities. Plaintiffs seek to avoid these transactions."[9]

- "In essence, the issuers—Ferrum, CAG, the Oliphant Entities and RPF and their control persons Cox, MLC, MCKC, Allen, AFA, Landzacha, L. Duane Allen, Walt, and Ryan engaged in an enterprise that raised capital from Plaintiffs and other investors to, in turn, fund loans to CAG and RPF to fund their business operations."[10]

- "At some point in 2021 or 2022, Walt, the majority owner of CAG, sold the company or its assets to the Oliphant Entities which then merged with, or otherwise took a controlling interest in CAG. Walt received transfers from CAG at a time when CAG was insolvent. Likewise, the Oliphant Entities received transfers from CAG at a time when CAG was insolvent and in contravention of the liens promised to Plaintiffs. Further, it is believed that the funds provided to CAG by Ferrum as a result of the investments were ultimately transferred to the Oliphant Entities as the new operator of CAG. Upon information and belief, the Oliphant Entities did not pay reasonably equivalent value for the transfers made to CAG and its insiders given the massive outstanding liabilities that were, or should have been, on its books."[11]

- "Pursuant to the terms of the various Plaintiffs' notes, CAG, Walt, the Oliphant Entities, RPF and Ryan, received investor funds to purchase bad debt instruments or for their business operations. As is plainly illustrated by their failure to remit payment to Ferrum, those transfers were of substantially all of Ferrum and Ferrum IV's assets and both companies became insolvent shortly after those transfers. Furthermore, Walt appears to have absconded with those funds."[12]

4. To be clear, Mr. Collins vehemently denies the allegations asserted against him, including the claims that he "abscond[ed] with any funds" or that at his direction, the Debtor was knowingly participating in any purported scheme being operated by the Ferrum Defendants. Mr. Collins also rejects any attempt to link the Debtor's legitimate business under his direction with any purported wrongdoing orchestrated by any other Defendants. Nevertheless, as pleaded by

---

[9] Musgrove Plaintiffs' Second Amended Petition [ECF No. 1-6] at ¶ 18.

[10] Musgrove Plaintiffs' Second Amended Petition [ECF No. 1-6] at ¶ 117.

[11] Musgrove Plaintiffs' Second Amended Petition [ECF No. 1-6] at ¶ 132.

[12] Musgrove Plaintiffs' Second Amended Petition [ECF No. 1-6] at ¶ 288.

Plaintiffs, the claims asserted jointly against the Debtor (*Collins Asset Group*) and Mr. Collins are inextricably intertwined.

   B. **The Court should deny Plaintiffs' Motions, at least as to the claims against Mr. Collins**.

   5.     Section 1334(b) provides for federal jurisdiction over proceedings "related to" cases arising under the Bankruptcy Code.  Courts in the Fifth Circuit interpret this standard broadly—the test for whether a proceeding properly invokes federal "related to" jurisdiction is whether the outcome of the proceeding could conceivably affect the estate being administered in bankruptcy. *Matter of Highland Capital Mgmt., L.P.*, 2023 WL 4842320, at *4 (5th Cir. July 28, 2023); *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007).  In other words, an action is "related to" the bankruptcy case if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate. *See In re Spillman Dev. Group, Ltd.*, 710 F.3d 299, 304 (5th Cir. 2013) (citations omitted).

   6.     Mr. Collins opposes Plaintiffs' Motions to the extent Plaintiffs seek remand of the claims asserted against him, since the claims against the Debtor will remain in federal court.  The claims against Mr. Collins are clearly "related to" the Debtor and the administration of the Debtor's bankruptcy estate.  And all claims against Mr. Collins are inextricably intertwined with the Debtor's affairs and cannot be resolved without impacting the Debtor's estate. *See, e.g., Gisinger v. Patriach*, 2016 WL 6083981, at *3 (S.D.N.Y. Oct. 18, 2016) (finding "related to" jurisdiction over claims against former CEO where, among other things, the proceedings were "inextricably intertwined by virtue of the identical facts and assertions" against both the CEO and the debtor); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) (finding related-to jurisdiction over investors state court litigation against financial institutions for allegedly aiding and abetting

Madoff Ponzi scheme) (cited with approval and as consistent with Fifth Circuit law by *In re WC Alamo Indus. Ctr., LP*, 2023 WL 8531544, at *6 (Bankr. W.D. Tex. Dec. 8, 2023)).

7. Indeed, adjudicating the claims against Mr. Collins in a different forum would require separate determinations regarding the Debtor's solvency, the validity of its transfers, the extent of its liabilities and assets, and other matters central to the administration of the estate. For instance, if Plaintiffs were to proceed against Mr. Collins in state court without the Debtor and obtained a judgment invalidating purported transfers allegedly made by the Debtor to Mr. Collins on the grounds of insolvency, this could potentially render all similar transfers by the Debtor subject to avoidance. Moreover, any judgment against Mr. Collins would, by definition, enlarge or diminish the property of the estate and would implicate Mr. Collins's claims against the estate, including but not limited to his rights of indemnification from the estate.

8. Plaintiffs' claims also address the legitimacy of the Debtor's entire business, potentially affecting the rights, claims, and interests of other creditors, lenders, and stakeholders. A judgment against Mr. Collins for involvement in alleged fraudulent activities attributed to the Debtor (which Mr. Collins denies) would necessarily implicate the Debtor's entire business. And again, any theoretical recovery resulting from such a judgment would (or should) likely become part of the estate to be distributed among all creditors, not solely for the benefit of the Musgrove Plaintiffs.

9. Additionally, as discussed above, Mr. Collins has, or will have, contribution and indemnity claims against the estate in connection with Plaintiffs' claims.[13] On this basis alone, there is related-to jurisdiction over the claims asserted against him. *See In re Enron Corp. Sec.,*

---

[13] *See* Exhibit 1, Operating Agreement for Collins Asset Group, LLC, which provides for indemnification of all claims against Mr. Collins.

*Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 761-62 (S.D. Tex. 2005) (holding that related to jurisdiction exists where underlying litigation would lead to third-party defendants' claims for contribution and indemnity against debtor). *See also SPV Osus Ltd.*, 882 F.3d at 340-42.

10. Finally, Plaintiffs fail to establish the necessary elements for abstention as to their claims against Mr. Collins. Plaintiffs' claims against Mr. Collins constitute core proceedings since Plaintiffs essentially seek to recover monies that they claim were wrongfully transferred out of the Debtor. *In re Ramirez*, 413 B.R. 621, 630 (Bankr. S.D. Tex. 2009) ("Actions to recover estate property wrongfully removed from the estate and for the benefit of the estate and its innocent creditors are unquestionably core proceedings."). As such, mandatory abstention cannot apply.[14] *See id.* (holding that mandatory abstention did not apply to fraudulent transfer and related conspiracy claims against non-debtors); *see also Shipley Garcia Enterprises, LLC v. Cureton*, 2012 WL 3249544, at *10 (S.D. Tex. Aug. 7, 2012) (finding mandatory abstention did not apply to state law TUFTA and related fraud claims arising from alleged fraudulent scheme).

11. The permissive abstention factors and principles of equity also weigh in favor of denying Plaintiffs' Motions as to their claims against Mr. Collins. In brief, the following factors clearly weigh against abstention as to the claims against Mr. Collins: (1) the effect or lack thereof on the efficient administration of the estate; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; and (14) the possibility of

---

[14] It is also not clear that this litigation can be timely resolved in state court or in parallel with the Debtors' bankruptcy proceeding, such that the resolution of the Debtor's entire bankruptcy case would likely be waiting on a resolution of the state court litigation.

prejudice to other parties in the actio. *See Shipley Garcia Enterprises, LLC*, 2012 WL 3249544, at *10 (listing and applying the permissive abstention factors).

12. More broadly, interests of judicial economy and principles of equity strongly support keeping the claims against Mr. Collins with the claims against the Debtor. Every cause of action asserted against Mr. Collins derives from, and turns on, the same alleged misconduct (and the same transfers) that form Plaintiffs' claims against the Debtor. Much of the relevant documentary evidence that Mr. Collins would need for his defense is in possession of the Debtor or its affiliates. Allowing Plaintiffs to pursue their claims against Mr. Collins, without the presence of the Debtor, would be extremely prejudicial to him, would be a waste of judicial resources, and could result in inconsistent findings or results. Furthermore, and as noted, adjudicating the claims against Mr. Collins in a separate forum would necessarily require a determination of the Debtor's solvency, the validity of its transfers, and the extent of its liabilities, issues that are quintessentially intertwined with the administration of the estate.

## **CONCLUSION**

For the foregoing reasons, and as will be further shown at the hearing in connection with Plaintiffs' Motions, the claims against Mr. Collins are inextricably intertwined with the claims against the Debtor and cannot be resolved without materially impacting the rights of the estate and its creditors. As such, Plaintiffs' Motions to remand should be denied as to Mr. Collins.[15]

---

[15] For the avoidance of doubt and pursuant to Local Rules 9027-1(b)(4), (5), to the extent that any claim or cause of action asserted against Mr. Collins is deemed to be non-core or unrelated to the Bankruptcy Case, or is otherwise not subject to final orders or judgments consistent with Article III of the United States Constitution, Mr. Collins does not consent at this time to the entry of final orders or judgments by the Bankruptcy Court. Similarly, to the extent that any claim or cause of action asserted against Mr. Collins is deemed to be a core claim, Mr. Collins does not at this time consent to the entry of final orders or judgments by the Bankruptcy Court.

8

Dated: July 25, 2025					Respectfully submitted,

											ALLEN OVERY SHEARMAN
											STERLING US LLP

											By: _____

											David P. Whittlesey (TSB No. 00791920)
											Nathan Romo (TSB No. 24137164)
											Michael Schneider
											300 West 6th Street, Suite 2250
											Austin, Texas 78701
											Telephone: 512.647.1900
											Facsimile: 512.647.1899
											david.whittlesey@aoshearman.com
											nathan.romo@aoshearman.com
											michael.schneider@aoshearman.

											*Attorneys for Defendant Walter Collins*

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of this Limited Objection and Opposition was filed on July 25, 2025 was delivered to all parties entitled to service via the Court's electronic filing system.

_____
David P. Whittlesey