IN THE UNITED STATES BANKRUPTCY
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE:<br>COLLINS ASSET GROUP, LLC,<br>    DEBTOR. | §<br>§<br>§ | CHAPTER 7: CASE NO. 25-51660-CAG |
| JUDY A. MUSGROVE, INDIVIDUALLY AND AS BENEFICIARY OF THE MAINSTAR TRUST, CUST. FBO JUDY A MUSGROVE IRA, *ET AL.*,<br>    PLAINTIFFS,<br><br>V.<br><br>BROOKLYNN CHANDLER WILLY, *ET. AL.*<br>    DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADV. PROC. NO. 25-05047-CAG<br><br>REMOVED FROM THE 438TH JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS CASE NO. 2023-CI-22575 |
| JOHN PATRICK LOWE IN HIS CAPACITY AS COURT APPOINTED RECEIVER,<br>    PLAINTIFF,<br><br>V.<br><br>COLLINS ASSET GROUP, LLC, *ET AL.*,<br>    DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## METROPOLITAN PARTNERS GROUP ADMINISTRATION LLC'S RESPONSE IN OPPOSITION TO THE CHAPTER 7 TRUSTEE'S <u>MOTION TO EXPEDITE DISCOVERY</u>

Metropolitan Partners Group Administration, LLC ("**Metropolitan**") files this response (the "**Response**") in opposition to the chapter 7 trustee's *Motion to Expedite Discovery* [Dkt. No. 112] (the "**Motion**") and opposes the request of Ron Satija, in his capacity as chapter 7 trustee (the "**Trustee**") of Collins Asset Group, LLC ("**CAG**" or the "**Debtor**"), to compress Metropolitan's discovery response period from thirty days to seven days.

## I.     <u>RESERVATION OF RIGHTS</u>

1.     Metropolitan, appearing specially and not generally, submits this Response to the Motion. By submitting the Response, Metropolitan does not consent to, and expressly preserves

and does not waive, any objections or defenses to this Court's jurisdiction over Metropolitan's person, to venue in this Court, to process, or to service of process, including, *inter alia*, any defenses available under Federal Rule of Civil Procedure 12(b)(1)–(5), as incorporated by Rule 7012 of the Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**"). Metropolitan will assert such objections and defenses by separate motion or further appropriate pleading at the proper time. Nothing in this pleading should be construed as a general appearance or as a waiver of any jurisdictional, venue or other related arguments or defenses.

## II.  PRELIMINARY STATEMENT

2.      Despite the Trustee's assertions, (i) the discovery sought is unrelated to any claims that the Trustee has asserted against Metropolitan in the above-captioned adversary proceeding (the "**Adversary Proceeding**") and thus is impermissible, and (ii) the Trustee lacks good cause to seek expedited discovery from Metropolitan, which was first added to the Adversary Proceeding on March 27, 2026. Metropolitan has not yet had the opportunity (or even the obligation) to respond to the amended complaint filed on March 27, 2026 [Dkt. No. 102] (the "**Amended Complaint**"). The supposed "emergency" is of the Trustee's own making.  Rather than conducting Bankruptcy Rule 2004 discovery to determine whether the Trustee has viable claims against Metropolitan or with respect to the Sale (defined herein) or Sale proceeds (he does not), the Trustee substituted as plaintiff against Metropolitan for another party in the Adversary Proceeding [Dkt. No. 110] and now seeks discovery tantamount to Bankruptcy Rule 2004 discovery from Metropolitan in the Adversary Proceeding. The Trustee admits that today it has no basis to object to the UCC Article 9 Sale of Metropolitan's collateral and no basis for a claim to any proceeds. The Trustee's motion is an attempt to trample upon Metropolitan's rights without following proper due process and procedure.

3.      The Court should deny the Trustee's Motion.

### III.    BACKGROUND

4.    Metropolitan has cooperated with the Trustee for months premised on *draft* Bankruptcy Rule 2004 documents requests (which were never finalized or served), engaged regularly with Trustee's counsel and conducted meet and confers on or about January 22, 2026, February 12, 2026, March 24, 2026 and March 25, 2026, well before any formal discovery was served late last week.  Additionally, client representatives of Metropolitan met with Trustee's counsel directly on two occasions—on or about January 16, 2026 and January 21, 2026. Metropolitan did so to help educate the Trustee on the landscape surrounding certain non-debtor credit facilities in which Metropolitan is a secured lender. Metropolitan participated in these conferences in good faith, despite the Trustee never having finalized or served a Bankruptcy Rule 2004 subpoena.

5.    After the March 25, 2026 conference, on March 26, 2026, the Trustee threatened to seek a TRO to stop a private UCC Article 9 sale (the "**Sale**") of assets unrelated to CAG or Hollins Holdings. On March 27, 2026, counsel for Metropolitan held a conference with the Trustee to explain in detail the assets being sold and that great effort was expended to remove from the Sale any CAG assets or even assets that CAG may have once had an interest in. In response to the Trustee's immediate demand for some documents related to the Sale (and some that were not related to the Sale), Metropolitan did not object, but instead cooperated and voluntarily produced over 1500 pages of documents in a very short time period, over a weekend, in order to accommodate the Trustee. Yet, the Trustee was not satisfied and, despite admitting that he has no basis to seek a TRO to stop the Sale, demanded that Metropolitan segregate proceeds of the Sale until he could conduct a further review of the documents. In addition, the Trustee continued to demand production of documents from Metropolitan that do not relate to the Sale.  To allow for more time for the Trustee and Metropolitan to confer and to avoid unnecessary Court intervention,

3

Metropolitan offered, and the Trustee accepted, the segregation of the net proceeds of the Sale for fourteen days after the Sale's closing. Metropolitan also agreed that the Sale would not close on or before April 1, 2026 and that Metropolitan would inform the Trustee of the closing of the Sale and thus the beginning of the fourteen-day segregation period.

6. The Sale has not closed as of the date of this Response and the fourteen-day segregation period has not even begun.[1]

7. Metropolitan was served with the Amended Complaint adding it as a defendant on March 27, 2026. On April 1, 2026, the Trustee served formal Requests for Production and previewed his intention to seek an order for expedited discovery from the Court. On April 2, 2026 the Trustee moved for an expedited hearing on the Motion to shorten the discovery response time. Separately, the Trustee also moved to expedite discovery from the Oliphant entities.

8. Metropolitan proposed meeting with the Trustee on April 6, 2026 to enable Metropolitan to ask questions regarding the Trustee's newly asserted, yet unsupported, claims regarding the Sale and Sale proceeds, and to provide additional relevant factual background. The purpose of this conference was to help Metropolitan understand the Trustee's need for certain discovery and narrow the scope of any disagreement. Instead of agreeing to confer at that time, Trustee's counsel used Metropolitan's stated availability for a meet and confer to seek a hearing on his Motion at the same time.

9. The Court set a hearing on the Motion on April 7, 2026 at 9:30 a.m. (CT), and ultimately the parties met and conferred on April 6, 2026.

---

[1] The Trustee takes umbrage with Metropolitan's decision to not enter into a consent order regarding the Sale and/or the Sale Proceeds. *See* Motion at ¶ 9. As an initial matter, the draft consent order provided by Trustee's counsel was tantamount to a temporary injunction and shifted the burden of proof to dissolve the restraint on distribution of Sale proceeds from the Trustee to Metropolitan. Notwithstanding, Metropolitan's concerns with entering into a consent order were far more practical—Metropolitan was, and is, concerned that entering into a consent order before answering, or otherwise filing a responsive pleading to, the Amended Complaint would risk waiving certain of Metropolitan's rights, including arguments and defenses related to jurisdiction and venue.

## IV.     ARGUMENT

### A. Metropolitan was served on March 27, 2026, so discovery is premature and improper.

10.     On March 26, 2026, the Ferrum receiver moved to amend the complaint and assert claims on behalf of the receiver, against, *inter alia*, (i) CAG and (ii) Metropolitan [Dkt. No. 99].

11.     On March 26, 2026, the Court granted the receiver leave to amend its complaint [Dkt. No. 100], and the receiver filed the Amended Complaint, which named Metropolitan as defendant on account of proceeds of certain loan portfolios allegedly received by Metropolitan which should allegedly have been paid to Ferrum. Concurrently, the Trustee moved to substitute in as plaintiff inexplicably purporting that the receiver's claims **against CAG** and Metropolitan were property of the CAG estate.

12.     On April 3, 2026, notice was filed on the docket that Metropolitan was served with the Amended Complaint on March 27, 2026 [Dkt. No. 116]. Metropolitan is not required to answer or otherwise respond to the Amended Complaint until April 27, 2026.

13.     Moreover, the claim the Trustee has asserted against Metropolitan relates to loan proceeds that Metropolitan allegedly received which allegedly belong instead to Ferrum Capital, an issue completely unrelated to the pending Sale. Accordingly, not only is the requested discovery premature, it is also improper in the Adversary Proceeding at this time—the Trustee has waived its right to seek discovery under Bankruptcy Rule 2004 by virtue of asserting claims in the Adversary Proceeding against Metropolitan and is no longer allowed to go on a "fishing expedition." *See In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988) ("However, once an actual adversary proceeding has been initiated, 'the discovery devices provided for in Rules 7026–7037 . . . apply and Rule 2004 should not be used.' **Rule 2004 may not be used to circumvent the**

5

**protections offered under the discovery rules, 7026 to 7037**.") (emphasis added) (internal citations omitted).

14.     Metropolitan agreed to engage in good faith informal document production relevant to the Trustee's concerns about the Sale and the Sale proceeds.  *See* Email from J. Koenig to A. Bendana dated March 30, 2026.  Metropolitan stands by this commitment.  However, Metropolitan never agreed to allow the Trustee to take wide-ranging discovery into issues unrelated to the Sale and Sale proceeds, which is exactly what the discovery requests propounded by the Trustee seek to do.[2]

### B.  The Trustee lacks good cause to seek expedited discovery.

15.     The Trustee's Motion is not driven by a genuine emergency. The Trustee has had ample time to seek Bankruptcy Rule 2004 discovery from Metropolitan. Even prior to the parties' initial conference in January 2026, the Trustee has long been aware of Metropolitan's lending relationship with the Oliphant entities, Metropolitan's secured position, and the credit maturity default (in August 2025) resulting in the Sale of non-debtor assets.

16.     Metropolitan has conferred with the Trustee on at least five occasions, explaining the factual background for the Trustee's benefit. After the latest call prior to the filing of the Amended Complaint, which occurred on March 25, 2026, counsel for the Trustee indicated that it would work on paring down its proposed requests in light of the discussions. The Trustee did not, however, promptly serve revised requests or seek Bankruptcy Rule 2004 discovery.

---

[2] The Trustee's proposed Request Nos. 1-5, 10 and 11 seek documents and communications that are outside of Metropolitan's possession, custody and control.  Request No. 9, to the extent relevant to the Sale at all, is overly broad for the limited purpose of addressing the Trustee's concerns with the Sale, and are unduly burdensome, particularly in light of the Trustee's proposed 7-day response deadline.  Metropolitan can respond to requests Nos. 6 and 7 to the extent related to portfolios funded by Metropolitan.

17.     Instead, the Trustee threatened to seek a TRO against the Sale and became the nominal plaintiff in prior pending litigation that was just amended to assert (i) claims against the Debtor, which are now apparently being pursued by the Trustee on behalf of the Debtor, and (ii) a questionable claim against Metropolitan which may not be within this Court's jurisdiction.

18.     Simply put, the current situation is entirely of the Trustee's making.  The Trustee served improper, sweeping discovery on April 1, 2026, and simultaneously announced his intent to shorten Metropolitan's response period to seven days – without legal authority or precedent – in direct contravention to the due process protections established in the Federal Rules of Civil Procedure as adopted by the Bankruptcy Rules. The Trustee's litigation tactics, including his determination to assert claims against Metropolitan in a pending Adversary Proceeding while waiving his ability to utilize Bankruptcy Rule 2004, gave rise to the circumstances that the Trustee now invokes as "good cause" to shorten Metropolitan's deadline to respond to the Trustee's discovery requests in the pending Adversary Proceeding by twenty-three days and approximately nineteen-days before a responsive pleading to the Amended Complaint is due.

19.     Metropolitan, by contrast, has been transparent, responsive and practical. It proposed to use April 6, 2026 for a substantive meet and confer to address targeted discovery germane to the Trustee's concerns regarding the Sale of assets that are unrelated to the Debtor's estate, but the Trustee instead sought to set a hearing during that very time. The Sale has not closed and is unlikely to close before, at earliest, April 9, 2026.  Metropolitan has agreed to segregate the proceeds of the Sale for a period of fourteen-days after the closing of the same—not fourteen-days from the date of its agreement to segregate funds.  In light thereof, there is no emergency and the Trustee's proposed seven-day response deadline is both unnecessary and unreasonable.

20.     Moreover, the Trustee acknowledges in his motion that he cannot assert a colorable argument for why the Debtor's estate has any interest in the Sale or the Sale proceeds. *See, e.g.*, Motion at ¶ 3 ("Unless the Trustee receives production sufficient to rule out a tracing of estate funds to the Sale assets – in which case the dispute may be mooted – the Trustee intends to file a motion for a preliminary injunction before the segregation period expires."). The assets subject to the Article 9 sale are unrelated to CAG or Hollins Holdings. The Trustee states it must "rule out a tracing of estate funds to the Sale assets" but this relates to claims for money damages that the Trustee might be entitled to bring and can be adjudicated at any time pursuant to the appropriate procedures. Moreover, the type of discovery the Trustee seeks through the Motion is what Bankruptcy Rule 2004 is intended for, not discovery under the Federal Rules of Civil Procedure which are the operative rules governing discovery in the Adversary Proceeding. *See In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988).

21.     Metropolitan has done its best to work with the Trustee to avoid burdening this Court while addressing the Trustee's concerns, but the Trustee's actions make clear that the Trustee is intent on value-destructive litigation. The Trustee's actions have put him in a position where, procedurally, he cannot take the discovery he allegedly needs to uncover some theoretical estate claims that he was unable to identify since being appointed almost eight (8) months ago. This is no fault of Metropolitan. While Metropolitan is willing to produce documents related to the Sale and Sale proceeds informally, the Trustee's discovery requests are largely unrelated to the Sale and the Sale proceeds; moreover, imposing a seven-day response deadline for improper discovery is entirely unwarranted and contrary to the due process afforded defendants in an adversary proceeding. The Motion should be denied.

## V.    CONCLUSION

22.    For these reasons, the Court should deny the Motion.


Dated: April 6, 2026                                        Respectfully Submitted,

**HOLLAND & KNIGHT, LLP**

*/s/  Christopher A. Bailey*
L. Bradley Hancock
Texas Bar No. 00798238
Anthony F. Pirraglia
Texas Bar No. 24103017
Christopher A. Bailey
Texas Bar No. 24104598
Holland & Knight LLP
811 Main Street, Ste. 2500
Houston, Texas 77002
Tel.: 713.217.2886
Email: brad.hancock@hklaw.com
         anthony.pirraglia@hklaw.com
         chris.bailey@hklaw.com

*Counsel for Metropolitan Partners*


## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2026, I caused a copy of the foregoing document to be served on all parties entitled to notice via the Court's CM/ECF system.

*/s/  Christopher A. Bailey*
Christopher A. Bailey